# UNITED STATES AIR FORCE COURT OF CRIMINAL APPEALS

————————————

**No. ACM 40714**

————————————

**UNITED STATES**
*Appellee*

**v.**

**Marc W. PENNINGA**
Major (O-4), U.S. Air Force, *Appellant*

————————————

Appeal from the United States Air Force Trial Judiciary

Decided 22 July 2026

————————————

*Military Judge*: Pilar G. Wennrich (arraignment and pretrial motions); Brian M. Thompson (trial).

*Sentence*: Sentence adjudged 27 June 2024 by GCM convened at Seymour Johnson Air Force Base, North Carolina. Sentence entered by military judge on 11 August 2024: Dismissal and confinement for 30 days.

*For Appellant*: Major Frederick J. Johnson, USAF.

*For Appellee*: Lieutenant Colonel Jenny A. Liabenow, USAF; Major Vanessa Bairos, USAF; Major Regina Henenlotter, USAF; Major Kate E. Lee, USAF; Mary Ellen Payne, Esquire.

Before MORGAN, GRUEN, and RAMÍREZ, *Appellate Military Judges*.

Judge RAMÍREZ delivered the opinion of the court, in which Chief Judge MORGAN and Senior Judge GRUEN joined.

————————————

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 30.4.**

————————————

RAMÍREZ, Judge:

A military judge sitting as a general court-martial convicted Appellant, in accordance with his pleas, of one specification of wrongful use of cocaine on

divers occasions[1] in violation of Article 112a UCMJ, 10 U.S.C. § 912a, and one specification of fraternization in violation of Article 134, UCMJ, 10 U.S.C. § 934.[2]

Appellant pleaded not guilty and litigated one specification of wrongful distribution of dextroamphetamine in violation of Article 112a UCMJ;[3] one specification of sexual assault in violation of Article 120 UCMJ, 10 U.S.C. § 920; and one specification of conduct unbecoming an officer and a gentleman in violation of Article 133, UCMJ, 10 U.S.C. § 933. The military judge found Appellant not guilty of each of these specifications.

The military judge sentenced Appellant to a dismissal, confinement for 30 days, and a reprimand. The convening authority took no action on the findings, but disapproved the reprimand.

Appellant raises one issue on appeal, which we have rephrased: whether the sentence to a dismissal is inappropriately severe. Additionally, although not raised by Appellant, we consider whether Appellant is entitled to relief due to untimely appellate review.

We find no error that materially prejudiced Appellant's substantial rights, and we affirm the findings and sentence.

## I. BACKGROUND

The charges in this case stem from three separate incidents, all involving Appellant partying and making bad decisions. The first incident occurred in December 2020, several months into the COVID-19 pandemic. Appellant, a Major and fighter pilot, was stationed at Royal Air Force Lakenheath, England, and lived off base in Cambridge, England. The local restrictions during the pandemic included a restriction that only individuals who lived within the residence were allowed to be in the residence. On Christmas Day 2020, Appellant was communicating with two junior female Airmen that he worked with,

---

[1] Appellant was charged with and pleaded guilty to wrongful use of cocaine on divers occasions. His "statement of the case," does not reflect that.

[2] Unless otherwise noted, all references to the UCMJ, Rules for Courts-Martial, and Military Rules of Evidence (Mil. R. Evid.) are to the *Manual for Courts-Martial, United States* (2019 ed.).

[3] There was an additional specification of wrongful drug distribution which was withdrawn and dismissed prior to the entry of pleas.

Airman First Class OG (OG) and Senior Airman AS (AS).[4] Notwithstanding the local COVID restrictions, Appellant invited both Airmen to his house. The Airmen had been drinking alcohol prior to arriving at Appellant's house and took a bottle of liquor with them. After OG was straddling and kissing Appellant, OG saw Appellant rubbing AS's leg. The two Airmen began fighting and OG left. She decided to walk home in the middle of the night. Despite their fight, OG tried to convince AS to leave with her, because OG perceived AS was drunk and they were both staying at OG's house during the holiday period. AS refused to leave and stayed with Appellant. She spent the night with Appellant, in his bed, nude. This incident formed the basis for the charge of fraternization in violation of Article 134, UCMJ, for sleeping in a bed with a nude, junior Airman, to which Appellant pleaded guilty. Later, AS raised an allegation of sexual assault against Appellant that occurred this same evening, of which he was acquitted.

Approximately two-and-a-half years later, Appellant found himself in North Carolina where the second and third incidents occurred. On Friday, 14 July 2023, Appellant was at a party in Raleigh, North Carolina, and used cocaine with a person who he referred to as an "associate" of one of his friends. The following Monday, 17 July 2023, Appellant was selected for a random urinalysis. According to Appellant, his sample tested positive for the cocaine he had used the Friday before. When the Air Force found out about Appellant testing positive for cocaine, he was ordered, on Monday, 31 July 2023, to continue providing urine samples, pursuant to a *Bickel*[5] testing policy. He tested positive, again, for cocaine. This was, according to Appellant, because Appellant on Saturday, 29 July 2023, was at another party. This time, Appellant was on a boat in the channel of Wilmington, North Carolina, with some of his civilian friends. He used cocaine with one of them. These incidents formed the basis for the charge of wrongful use of cocaine, on divers occasions, in violation of Article 112a, UCMJ, to which Appellant pleaded guilty.

---

[4] Although AS was a Senior Airman at the time of the charged conduct, she subsequently transferred to the Space Force and the rank on the charge sheet reflects her rank of Sergeant.

[5] *United States v. Bickel*, 30 M.J. 277 (C.M.A. 1990) (where the United States Court of Military Appeals held that after a servicemember's urine tests positive for drugs, subsequent testing of the servicemember's urine is a lawful continuation of the original test and does not require a probable cause determination).

## II. DISCUSSION

### A. Sentence Severity

Appellant claims that the dismissal was not warranted in this case. He points out that he was a pilot who was convicted of less serious offenses for which he accepted responsibility by pleading guilty, compared to the offenses of which he was acquitted. When considering sentence appropriateness, Appellant asks the court to only consider the convictions for two cocaine uses and allowing an enlisted member to sleep in his bed. Appellant argues that these offenses, when compared to his service record, should convince us that the dismissal is inappropriately severe.

#### 1. Additional Background

Appellant is a graduate of the U.S. Air Force Academy. After graduation, he attended pilot training and was selected to be an instructor pilot. Later, he flew the F-15E and deployed to the Middle East. During his career, Appellant received three Air Medals, including two with a "C" device for combat and two Air Force Commendation Medals. Appellant's officer performance reports demonstrate that he was a top performer. Appellant acknowledges that he presented all this mitigating "evidence, and more," to the military judge. The military judge was also provided the letter of reprimand that Appellant received for his fraternization.

By the time of the drug offenses, Appellant was no longer in a flying status and was being processed for an administrative discharge. During the guilty plea inquiry Appellant explained that he used cocaine the first time when he was depressed as his "entire life plan of flying for the airlines had essentially been derailed." He also described being offered cocaine as an "opportunity" to help with the depression. Additionally, Appellant explained that he felt that if he did not use cocaine, the other people at the party "would have maybe felt differently about [him]." With regard to his second charged use, Appellant also referred to this as an "opportunity." He explained that he was "worried about the first urinalysis coming back positive" when he used cocaine again.

In his unsworn statement, Appellant told the military judge that he appreciated the military judge's "thoughtful decision in this case and [he's] not requesting any specific sentence." Instead, Appellant said that he would "accept whatever sentence [the military judge felt] is appropriate in this case."

#### 2. Law

Courts of Criminal Appeals review issues of sentence appropriateness de novo. *United States v. Lane*, 64 M.J. 1, 2 (C.A.A.F. 2006) (footnote omitted). We may affirm only as much of the sentence as we find correct in law and fact and determine should be approved on the basis of the entire record. Article 66(d),

UCMJ, 10 U.S.C. § 866(d). "We assess sentence appropriateness by considering the particular appellant, the nature and seriousness of the offense[s], the appellant's record of service, and all matters contained in the record of trial." *United States v. Sauk*, 74 M.J. 594, 606 (A.F. Ct. Crim. App. 2015) (en banc) (per curiam) (alteration in original) (citation omitted).

We are required "to review the appropriateness of each punishment in the adjudged sentence." *United States v. Flores*, 84 M.J. 277, 281 (C.A.A.F. 2024) (citations omitted). Although the Courts of Criminal Appeals are empowered to "do justice[ ] with reference to some legal standard," we are not authorized to grant mercy. *United States v. Guinn*, 81 M.J. 195, 203 (C.A.A.F. 2021) (quoting *United States v. Nerad*, 69 M.J. 138, 146 (C.A.A.F. 2010)). Put simply, we are "to ensure that justice is done and that the [appellant] gets the punishment he deserves." *United States v. Sanchez*, 50 M.J. 506, 512 (A.F. Ct. Crim. App. 1999) (internal quotations marks and citations omitted.)

Rule for Courts-Martial 1003(b)(8)(A) explains that regardless of the maximum punishment specified for an offense, "a dismissal may be adjudged for any offense of which a commissioned officer . . . has been found guilty."

### 3. Analysis

Both the Government and Appellant cite *United States v. Plourde*, No. ACM 39478, 2019 CCA LEXIS 488, at *44–45 (A.F. Ct. Crim. App. 6 Dec. 2019) (unpub. op.), in support of their respective positions. In *Plourde*, the appellant was charged with three specifications of sexual assault by digital, oral, or penile penetration of the same victim during one encounter in his office. *Id.* at *12. The appellant was convicted of only one of the sexual assaults. We explained that,

> all three sexual assaults were components of the overall sexual encounter in [a]ppellant's office. Despite the panel's acquittal of the first two offenses, the conduct underlying those offenses . . . amounts to facts and circumstances surrounding and immediately preceding the convicted-of offense, and therefore was available to the panel for consideration in arriving at a sentence.

*Id.* at *44–45.

In the case before us, AS later raised an allegation of sexual assault against Appellant occurring on the same evening of 25 to 26 December 2020, when she slept at Appellant's residence, of which Appellant was acquitted.

According to Appellant, "[t]he Government takes this consideration of context too far, using evidence regarding an acquitted offense to justify the sentence." Specifically, Appellant argues that "[t]he Government tries to expand the conduct for which Appellant is being punished by imploring the [c]ourt to

consider testimony regarding the offenses for which Appellant was acquitted, especially AS's account of sexual activity."

After careful consideration, we find that we do not have to take *Plourde* into consideration to determine sentence severity as even without the facts and circumstances surrounding and immediately preceding the convicted-of offenses, we reach the same conclusion.

Here, we weigh Appellant's proficient duty performance and his qualifications as a skilled fighter pilot against a field grade officer who invited two junior enlisted members with whom he worked, to his house, after they had been drinking, and slept with one of them, in his bed, naked. We take into account the adjudged sentence, including dismissal, and weigh that against an Air Force Academy graduate who was selected to be a fighter pilot and when faced with the possibility of administrative separation decided to use cocaine on more than one occasion. Finally, we consider that only months after the world shut down in a global pandemic, when restrictions were put in place for the safety of friends, family, and neighbors, Appellant just disregarded those restrictions. He invited two junior enlisted females to his house. He let them physically fight in his house. He let one of them leave, walking back to her home, in the middle of the night, in the dead of winter, after she had been drinking.

We also cannot ignore that when his conduct was discovered and his officership was tested, instead of acting in a manner commensurate with his rank, he went to a party and used cocaine. Additionally, when he provided a urine sample and suspected that he would test positive, he doubled down and used even more cocaine. In the face of adversity, this Air Force officer elected to engage in additional criminal behavior. We are convinced that justice was done with the imposition of the dismissal and that Appellant received an appropriate sentence, including a punitive discharge.

We conclude that the dismissal is correct in law and fact and should be approved on the basis of the entire record. We have assessed the sentence by considering the nature and seriousness of the offenses for which Appellant was convicted; by considering his service record of service; and by considering all matters contained in the record of trial.

**B. Post-Trial Delay**

Although Appellant did not raise the issue of post-trial delay, we consider the matter as the case was not adjudicated within 18 months.

**1. Additional Background**

This case was docketed with this court on 20 November 2024. There have been 15 requests for enlargements of time (EOT) filed by Appellant and each opposed by the Government.

On 9 January 2025, Appellant submitted his first motion for an EOT, requesting an additional 60 days in which to file his assignment of error. This continued until Appellant moved for a fifteenth enlargement of time, and filed his assignment of error on 24 April 2026. The Government filed its answer on 21 May 2026. Appellant filed his reply on 28 May 2026. From the date of docketing of the case to Appellant's reply, 554 days elapsed.

**2. Law**

"[C]onvicted servicemembers have a due process right to timely review and appeal of courts-martial convictions." *United States v. Moreno*, 63 M.J. 129, 135 (C.A.A.F. 2006) (citations omitted). In *Moreno*, the CAAF established a presumption of facially unreasonable delay "where the action of the convening authority is not taken within 120 days of the completion of trial," "where the record of trial is not docketed by the service Court of Criminal Appeals within thirty days of the convening authority's action," or "where appellate review is not completed and a decision is not rendered within eighteen months of docketing the case before the Court of Criminal Appeals." *Id.* at 142. In *United States v. Livak*, this court adapted the *Moreno* standard for cases referred to trial on or after 1 January 2019 and established an aggregated 150-day standard for facially unreasonable delay from sentencing to docketing with this court. 80 M.J. 631, 633 (A.F. Ct. Crim. App. 2020).

Where there is a facially unreasonable delay, we examine the four factors set forth in *Barker v. Wingo*, 407 U.S. 514, 530 (1972): "(1) the length of the delay; (2) the reasons for the delay; (3) the appellant's assertion of the right to timely review and appeal; and (4) prejudice [to the appellant]." *Moreno*, 63 M.J. at 135 (citations omitted).

The CAAF identified three types of cognizable prejudice for purposes of the right to timely post-trial review: (1) oppressive incarceration; (2) "particularized" anxiety or concern "that is distinguishable from the normal anxiety experienced by prisoners awaiting an appellate decision;" and (3) impairment of the appellant's grounds for appeal or ability to present a defense at a rehearing. *Id.* at 138–40 (citations omitted). Where there is no qualifying prejudice from the delay, there is no due process violation unless the delay is so egregious as to "adversely affect the public's perception of the fairness and integrity of the military justice system." *United States v. Toohey*, 63 M.J. 353, 362 (C.A.A.F. 2006).

Independent of an appellant's due process rights, the Courts of Criminal Appeals have authority to provide "appropriate relief" if an appellant has demonstrated error or excessive delay in the processing of his court-martial and after the entry of judgment has occurred. 10 U.S.C. § 866(d)(2); see *United States v. Valentin-Andino*, 85 M.J. 361, 367 (C.A.A.F. 2025).

We review de novo an appellant's entitlement to relief for post-trial delay. *Livak*, 80 M.J. at 633 (citing *Moreno*, 63 M.J. at 135).

**3. Analysis**

We issue our opinion more than 18 months after this court docketed Appellant's record of trial in this case on 12 July 2024. Therefore, under *Moreno*, there is a facially unreasonable delay. Accordingly, we have considered the *Barker* factors and find no violation of Appellant's due process rights.

While the length of the delay exceeded the *Moreno* standard for facially unreasonable delay, we find it is not an egregious delay. The delay included 15 requests by Appellant for enlargements of time that amounted to 554 days from the docketing of the case to being fully briefed. Thus, the reasons for the delay were largely those requested by Appellant. We do not find Appellant suffered cognizable prejudice. Absent prejudice, we also find the delay has not been so egregious as to adversely affect public perception of the military justice system.

Considering the *Barker* factors and the circumstances as a whole, absent prejudice, in light of the CAAF's guidance in *Toohey*, 63 M.J. at 362, we do not find a violation of Appellant's constitutional due process rights.

We do not find this case warrants relief for post-trial delay.

## III. CONCLUSION

The findings and sentence as entered are correct in law and fact, and no error materially prejudicial to Appellant's substantial rights occurred. Articles 59(a) and 66(d), UCMJ, 10 U.S.C. §§ 859(a), 866(d). Accordingly, the findings and sentence are **AFFIRMED**.

FOR THE COURT

CAROL K. JOYCE
Clerk of the Court